UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 10-80735-DIMITROULEAS

**PAUL BIRSTER AND ANGELA BIRSTER,**

           Plaintiffs,

vs.

**AMERICAN HOME MORTGAGE SERVICING, INC., a Delaware Corporation,**

           Defendant.
_____/

## AHMSI'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

American Home Mortgage Servicing, Inc. (**AHMSI**) did not cause Mr. or Mrs. Birster any damage. They have not made a mortgage payment in almost three years, and their debt was legitimately owed. Their claims of physical and emotional distress are totally unsupported. If Mr. and Mrs. Birster are distressed, it is from their own financial choices.

There are strictly legal bases for summary judgment in addition to the absence of any genuine factual issues. The Eleventh Circuit has confirmed that the Fair Debt Collection Practices Act, 12 U.S.C. § 2604, *et seq.* (**FDCPA**) and the Florida Consumer Collection Practices Act, FLA. STAT. § 559.55, *et seq*. (**FCCPA**) are inapplicable. Communications between AHMSI and the Birsters were related to enforcement of a security interest, *i.e.* their mortgage. The Birsters' inaccurate memories cannot base FDCPA or FDCPA liability, and the intentional infliction of emotional distress claim is not viable as a matter of law. AHMSI respectfully requests that judgment be entered in its favor.

## II. BACKGROUND AND COMPLAINT ALLEGATIONS

Mr. and Mrs. Birster refinanced their home loan on April 19, 2006 to get cash back for home repairs. (SUMF[1] ¶¶ 1,3.) As part of the refinance transaction Mr. Birster executed a note, and Mr. and Mrs. Birster executed a mortgage on the property for $377,200. (*Id.* ¶ 2.)

Mr. and Mrs. Birster modified their loan on September 12, 2007 and increased the loan amount to $403,429.87. (*Id.* ¶ 5.) After falling behind on their monthly mortgage payments, they again modified their mortgage loan on March 20, 2008 and increased the loan amount to $431,694.83. (*Id.* ¶ 4, 6.) Mr. and Mrs. Birster have no idea the last time they made a mortgage payment. (*Id.* ¶ 7.) The acknowledge there is no written agreement promising them a third loan modification. (*Id.* ¶ 8.)

AHMSI started servicing their loan on July 30, 2008. (*Id.* ¶ 9; Ex. 4.) On September 30, 2008, AHMSI notified the Birsters they were in default and that their loan was due for the August 1, 2008 payment (SUMF ¶ 10; Ex. 5.) The Birsters failed to bring the loan current and a foreclosure action was filed against them. (*Id.* ¶ 11.)

AHMSI began contacting the Birsters regarding the balance on the mortgage loan account, and the last telephone contact was on June 2, 2009. (*Id.* ¶¶ 12, 27-28.) AHMSI continued to make routine inspections of the property.

The Birsters allege several claims against AHMSI. They allege AHMSI's attempts to collect on the unpaid mortgage loan account, and subsequent property inspections, violate the FDCPA and FCCPA. They also assert a cause of action for intentional infliction of emotional distress premised on AHMSI's communications and property inspections. Expanded in more detail below, all claims fail as a matter of law.

---

[1] "SUMF" refers to the Statement of Undisputed Material Facts filed simultaneously with this motion pursuant to Local Rule 7.5.

### III. LEGAL ARGUMENT

**A.     Counts I and II — FCCPA and FDCPA**

    **1.     Foreclosure is not Debt Collection**

These claims fail as a matter of law because collecting on a mortgage loan is considered "security enforcement activity." In *Warren v. Countrywide Home Loans, Inc.*, the plaintiff alleged that, by failing to respond to his request for debt verification before it proceeded with a foreclosure sale of his home, the defendant violated the FDCPA. 342 Fed. Appx. 458, 460 (11th Cir. 2009). In addressing this argument, the court considered that the purpose of the FDCPA was to: "(a) stop debt collectors from using abus[ive] debt collection practices, (b) insure that debt collectors who refrain from such practices are not competitively disadvantaged, and (c) promote consist state action to protect consumers from such practices." *Id.*

Though "debt collector" is generally defined in the FDCPA, only § 1692f(6) specifically includes persons involved in the "enforcement of security interests." *Id.* The court concluded that enforcement of a security interest is not considered debt collection or covered by the FDCPA. *Id.* (citing *Fla. Right to Life, Inc. v. Lamar,* 273 F.3d 1318, 1327 (11th Cir. 2001) (recognizing the interpretive canon of *expressio unius est exclusio alterius*)). Because the foreclosure proceeding was enforcement of the security interest rather than debt collection, the court found no FDCPA violation. *Id.*

This holding was consistent with findings from Florida's Middle District. *See Trent v. Mortgage Elec. Registration Sys.*, 618 F. Supp. 2d 1356 (M.D. Fla. 2007), *aff'd* 288 Fed. Appx. 571 (11th Cir. 2008); *Acosta v. Campbell*, No. 6:04-cv-761-Orl-28DAB, 2006 WL 3804729, at *4 (M.D. Fla. Dec. 22, 2006) (noting most courts have concluded that "foreclosing on a mortgage is not debt collection activity for the purposes of the FDCPA"). Moreover, because the

FCCPA is modeled after the FDCPA, *see* FLA. STAT. § 559.77(5) ("due consideration and great weight shall be given to the interpretations of the . . . federal courts relating to the federal [FDCPA]"), the *Warren* holding is applicable to FCCPA claims. *See Cowan v. MTGLQ Investors, L.P.*, No. 2:09-cv-472-FtM-29SPC, 2010 WL 3701779, at *4 (M.D. Fla. Sept. 14, 2010) (dismissing FDCPA and FCCPA claim based on *Warren* holding); *see also Trent*, 618 F. Supp. 2d at 1360-61 (rational espoused under FDCPA applied equally to FCCPA).

While *Warren* invoked its reasoning in reliance on § 1692f(6), other courts find security enforcement activity is not covered by the FDCPA because security enforcement does not risk commission "of the same characteristic wrong that Congress sought to minimize [through enactment of the FDCPA]." *Overton v. Foutty & Foutty, LLP*, No. 1:07-cv-274-DFH/TAB, 2007 WL 2413026, at *5 (citing *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924-25 (N.D. Ind. 2004)).  While "the FDCPA 'was enacted in order to prevent the 'suffering and anguish' which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have' . . . a party with a security interest may have a 'present right' in a particular secured property that another possesses [and, therefore,] should be in a position to return." *Id.* (quoting *Jordan v. Kent Recovery Servs., Inc.*, 731 F. Supp. 652, 657-58 (D. Del. 1990)).

As the *Trent* court stated:

> The rationale for this finding is aptly explained in the precedent interpreting . . . [the FDCPA]—that is, foreclosing on a mortgage 'is distinct from the collection of the obligation to pay money.  The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor.  But, foreclosing . . . is an entirely different path.  Payment of funds is not the object of the foreclosure action.  Rather, the lender is foreclosing its interest in the property.'

*Trent*, 618 F. Supp. 2d at 1360 (quoting *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002)). This distinction suggests that, so long as the object of a communication is

4

to enforce a security interest, rather than obtain payment of funds ancillary to the mortgage proceedings, the communication is not a debt collection practice.

Consequently, while *Warren* and *Trent* concerned foreclosure proceedings, the same rationale applies here. It is undisputed that this lawsuit arises from communications related to a mortgage-secured debt. (SUMF ¶ 12.) AHMSI was seeking to enforce a security interest. For this reason alone, judgment in AHMSI's favor on the FDCPA and FCCPA claims is required.

### 2. AHMSI is Not a Debt Collector

Under the FDCPA, "a mortgage servicing company, or an assignee of a debt are not considered 'debt collectors,' as long as the debt was not in default as the time it was assigned." *Bentley v. Bank of America, N.A., et al.,* Case No. 10-60941-WPD at *4 (S.D. Fla., March 23, 2011) (order dismissing FDCPA claim with prejudice) (citations omitted). Likewise, the FCCPA excludes from the term "debt collector" if the collection activity "concerns a debt which was not in default at the time it was obtained by such person." Fla. Stat. §559.55(6)(f).

The Birsters were not in default until September 30, 2008, when they were mailed a notice of intent to foreclose. (SUMF ¶ 41.) AHMSI was already servicing this loan at the time the Birsters went into default, so the FDCPA and FCCPA claims fail. *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1308 (S.D. Fla. 2009).

### 3. No Harassing Frequency, Abusive Language, or Threatening of Legal Rights

Plaintiffs vaguely assert AHMSI violated § 559.72(7) by calling "on numerous and repeated occasions." (Compl. ¶ 18.) Mr. and Mrs. Birster, however, could not identify any particular caller, time of call, or number of calls with any level of specificity. (SUMF ¶¶ 13-29.) The phone calls were made merely to enforce AHMSI's security interest because the account was overdue. There is no evidence that AHMSI intended to harass Mr. or Mrs. Birster. To the

contrary, AHMSI was simply attempting to collect on a legitimately overdue mortgage account. (SUMF ¶¶ 6-8.)  The frequency of communications was not harassing as a matter of law.  *See, e.g., Schauer v. Morse*, 5 So. 3d 2, 5 (Fla. 4th DCA 2009).

The complaint mentions a handful of specific phone calls between April 16, 2009 and June 2, 2009, and alleges that AHMSI representatives used "willfully abusive language" in violation of § 559.72(8) and "threaten[ed] to assert the existence of some legal right when that person knows such legal right does not exist" in violation of § 559.72(9) (*Id.* ¶¶ 21-42, 61.)  The evidence does not support these boilerplate allegations.  Mr. and Mrs. Birster could not recall the specifics of any of the phone calls alleged in the complaint. (SUMF ¶¶ 13-29.)

### 4. Refusal to Contact Attorney is not a FCCPA Violation.

Plaintiff next argues that AHMSI violated § 559.72(18) (generally prohibiting contact with a represented borrower) by failing to contact their attorney.  (Compl. ¶ 24.)  The FCCPA does not require a creditor to contact a borrower's attorney.

In any event, the Birsters did not send written notice to AHMSI that they were represented by counsel until April 28, 2009. (Compl ¶ 25, Compl. Ex. A.)  They cannot recall any of the specifics of their conversations with AHMSI between April 28, 2009 and June 2, 2009, and have no evidence to establish that they individuals they spoke with *knew* the Birsters were represented by counsel. (SUMF ¶¶ 13-29.)

### 5. Damages.

Even if the Birsters claims survive the above legal deficiencies, their damages request is inappropriate.  While actual damages, including damages for emotional distress, may be awarded in the case of a FCCPA claim, Mr. and Mrs. Birster have provided no evidence of damages arising from the alleged FCCPA violations.  *Ugarte v. Sunset Constr., Inc.*, No. 8:07-cv-735-T-

23EAJ, 2008 WL 4723600, at *2 (M.D. Fla. Oct. 21, 2008) (debt collector is responsible for "actual damages sustained as a result of the violation"); *see also Montgomery v. Fla. First Fin. Group, Inc.*, No. 6:06-cv-1639-Orl-31KRS, 2008 WL 3540374, at *9 (M.D. Fla. Aug. 12, 2008) (disallowing claim of actual damages, including emotional distress damages, entirely).

Where the damages do not arise from the violation, they should be disallowed. *Ugarte*, 2008 WL 4723600, at *3. In *Ugarte*, the court disallowed emotional distress damages where the plaintiff presented no medical evidence or expert testimony "showing a causal link" between her claimed emotional distress damages. *Id.* Plaintiff was already under medical care, and no evidence established that her depression worsened as a result of the violation. *Id.*

Similar to *Ugarte*, Mr. and Mrs. Birster have presented no evidence of actual damages arising from the alleged FCCPA violations. Nor can they. Mr. and Mrs. Birster never filed initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1), never disclosed any expert witnesses or written reports in violation of Rule 26(a)(2), and it is too late to do so pursuant to Rule 26(a)(2)(D)(i). Without expert medical testimony, it will be impossible for Mr. and Mrs. Birster to show a causal link to their purported emotional distress.

Mrs. Birster is trying to recover damages for pre-existing conditions. (SUMF ¶¶ 31-33.) However, no new prescriptions or increase in dosage of medicine was prescribed following the alleged violations. (*Id.*) There is no causal connection between the alleged distress and AHMSI's communications. The same holds for Mr. Birster—his emotional stress stems from his wife's physical and mental condition, not the communications with AHMSI.

"[P]unitive damages [are] only appropriate when a defendant's conduct rises above the standard of willfulness, to the level of malicious intent." *Simmons v. Washington Mutual Finance, Inc.*, 2007 WL 641101, *2 (M.D. Fla. Feb. 26, 2007) (citing *Story v. J.M. Fields*, *Inc.*,

343 So. 2d 675, 677 (Fla. 1st DCA 1977)). "Malicious intent includes wrongful acts that 'evidence a purpose to inflict insult and injury, or are wholly without excuse.'" *Simmons*, 2007 WL 641101, *2 (quoting *Story*, 343 So. 2d at 677 and citing *Chrysler Corp. v. Wolmer*, 499 So. 2d 823, 825 (Fla. 1986)).

The Birsters have no evidence that AHMSI purposefully and intentionally tried to injure them. To the contrary, AHMSI was merely seeking to enforce a debt that was legitimately due. (SUMF ¶¶ 6-8.) The fact that Mr. and Mrs. Birster sent correspondence to AHMSI falsely representing that Mrs. Birster was "dying of brain cancer" is deplorable. (Compl. Ex. A.) That plaintiffs are now trying to use this false claim to bolster their lawsuit is even worse. (Compl. ¶ 19, 26.) Mrs. Birster does not have cancer. (SUMF ¶ 32.) The Birsters' physical and emotional distress stem from Mrs. Birster's pre-existing medical condition and from the stress caused by the inability to pay their mortgage. (Compl. ¶ 7, 31, 33; SUMF ¶¶ 4, 31-34.)

**B.     Count III – Intentional Infliction of Emotional Distress**

A cause of action for intentional infliction of emotional distress requires the Birsters to prove: **(i)** intentional or reckless conduct; **(ii)** so outrageous as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; and **(iii)** that the conduct caused severe emotional distress. *LeGrande v. Emmanuel*, 889 So. 2d 991, 994 (Fla. 3d DCA 2004). The cause of action for intentional infliction of emotional distress fails as a matter of law because the conduct complained of — communications related to delinquent mortgage loan payments — is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Liberty Mut. Ins. Co.* v. *Steadman*, 968 So. 2d 592, 594-95 (Fla. 2d DCA 2007) ("[w]hether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law").

### 1.     Conduct is Not "Outrageous" as a Matter of Law

AHMSI's action are not, as a matter of law, "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278 (Fla. 1985).  Mr. and Mrs. Birster were sporadically contacted by telephone between April 16, 2009 and June 2, 2009, but they have no specific recollection as to when the calls were made or what was discussed. (SUMF ¶¶ 13-26.)  At most, they recall the conversations were related to their failure to pay their mortgage loan. (*Id.* ¶ 12.)

Contrary to what is alleged in the complaint (Compl. ¶¶ 21, 29) plaintiffs do not recall receiving a phone call from an AHMSI representative threatening a foreclosure sale, or threatening to remove them from their home, or making derogatory comment about Birsters' counsel. (SUMF ¶¶ 13-26.)  Subsequent to the phone calls, AHMSI sent field inspectors to the Birsters' home and left contact information at their gate on three occasions over a five month span. (Compl. ¶ 45.)  The phone calls and field inspections do not come close to satisfying the standard of "outrageous conduct" necessary to state a viable claim for intentional infliction of emotional distress. *Williams v. Worldwide Flight SVCS., Inc.*, 877 So.2d 869, 870 (Fla. 3rd DCA 2004) (supervisors calling an African-American employee a "nigger," "monkey" and "black ass" to his face, on walkie-talkie and over the work radio in conjunction with threats of job termination and the filing of false disciplinary reports was "reprehensible, objectionable, and offense," it did not meet the threshold of extreme and outrageous conduct); *Byrd v. BT Foods, Inc.*, 948 So.2d 921, 928 (Fla. 4th DCA 2007) (employees taunting of plaintiff's HIV positive status "did not rise to the level of outrageous conduct required to sustain the tort."); *Matsumoto v. American Burial and Cremation Serv., Inc.*, 949 So. 2d 1054, 1057 (Fla. 2d DCA 2006) (funeral

9

home's cremation of decedent with the permission of decedent's brother, but without permission of decedent's estranged daughter, did not rise to level of outrageous conduct required to sustain daughter's claim for intentional infliction of emotional distress).

### 2. Conduct was Privileged

Even if the Court were to assume the actions alleged in the complaint were extreme and outrageous, such acts would be privileged as a matter of law because AHMSI was asserting legal rights in a legally permissible way. *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 279 (Fla. 1985) (holding that a party's actions are privileged if the party does not more than assert legal rights in a legally permissible way); *Canto v. J.B. Ivey and Co.*, 595 So.2d 1025, 1028 (Fla. 1st DCA 1992) ("[a] privilege exists as a matter of law to engage in reckless or even outrageous conduct if there is sufficient evidence that shows the defendant 'did no more than assert legal rights in a legally permissible way.'" (quoting *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 279 (Fla. 1985)).

Calling the Birsters at their home was legal. (SUMF ¶ 12.) Leaving information on the Birsters' gate (Compl. ¶¶ 45-46) was legal. Conducting routine property inspections is contractually allowed under the terms of the Birsters' mortgage. (SUMF ¶ 2; Ex. 3, Mortgage ¶ 9.) S*ee Baker v. Florida Nat'l Bank*, 559 So. 2d 284, (Fla. 4th DCA 1990) (affirming a district court's summary judgment dismissal of an emotional distress claim where the bank's enforcement of its contractual rights, even when acting in a fiduciary capacity, were not extreme and outrageous, and further finding that had the acts been extreme such acts would be privileged); *Restatement (Second) of Torts* § 46 (1965). Telephone calls and property inspections are legally permissible and this claim is not cognizable.

## IV. CONCLUSION

This lawsuit is a misguided attempt to leverage a loan modification in a corresponding state court foreclosure. Since taking over the servicing of this loan, AHMSI has taken reasonable measures to try to collect on an overdue mortgage loan. There is no dispute that the debt is owed and AHMSI is entitled to payment. The Birsters' vague recollection of events cannot base FDCPA and FCCPA liability, particularly here where Eleventh Circuit precedence establishes that collection of a security interest is not covered. The actions outlined in the complaint, even if entirely true, do not come close to stating a viable cause of action for intentional infliction of emotional distress. AHMSI respectfully requests judgment be entered in its favor on all counts.

Respectfully submitted,

s/ Eric S. Matthew
William P. Heller
Florida Bar No. 987263
e-mail:  william.heller@akerman.com
Kimberly A. Leary
Florida Bar No. 596051
e-mail: kimberly.leary@akerman.com
Eric S. Matthew
Florida Bar No. 0026539
e-mail: eric.matthew@akerman.com
**AKERMAN SENTERFITT**
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, Florida 33301
954-759-8945(ph)/954-463-2224 (fax)

*Counsel for AHMSI*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 20, 2011, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF electronic filing system which will automatically send a copy to all counsel of record in this case registered on the CM/ECF system, including: **Adam J. Knight, Esq.**, Henry W. Hicks, P.A., 3003 West Azeele Street, Suite 200, Tampa, FL 33609, fax (813) 871-9202.

By: s/ Eric S. Matthew