**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**Case No. 9:10-CV-80735-Dimitrouleas**

| | |
|---|---|
| **PAUL BIRSTER and** | : |
| **ANGELA BIRSTER,** | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| **V.** | : |
| | : |
| **AMERICAN HOME MORTGAGE** | : |
| **SERVICING, INC., a Delaware** | : |
| **Corporation,** | : |
| | : |
| **Defendant.** | : |
| _____ | : |

<u>**PLAINTIFFS' BRIEF IN RESPONSE TO THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

NOW COME the Plaintiffs, PAUL BIRSTER (Paul) and ANGELA BIRSTER (Angela) (collectively, the Birsters), by and through the undersigned counsel, and submit this Plaintiffs' Brief in Response to the Defendant's Motion for Summary Judgment, showing this Honorable Court as follows:

<u>**INTRODUCTION**</u>

The Birsters are a husband and wife suffering immense physical, psychological, and emotional distress as a result of unrelenting harassment and abusive collection tactics employed by American Home Mortgage Servicing, Inc. (AHMSI).  Through its collection activities as the presumed servicer of the Birsters' loan, AHMSI has so intimidated and harassed the Birsters that they fled their home in order to escape AHMSI's unabated attempts at intimidation, even while this litigation is pending.  The actions of AHMSI in collecting the Birsters' mortgage loan are unacceptable and are prohibited by the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692a <u>et</u>

seq. (FDCPA), and the Florida Consumer Collection Practices Act, FLA. STAT. §§ 559.55 et seq.

(FCCPA).   Further, the actions of AHMSI were directly intended to inflict emotional and

physical harm and damage upon the Birsters.

As shown more fully herein, the FDCPA applies to mortgage servicers that begin

collecting a debt after the debt is in default, as it was in this action.  Further, Courts have held

that there is a dividing line and distinction between mere enforcement of a security interest and

debt collection activity.   In other words, the filing of a foreclosure action may constitute

enforcement of a security interest, but unrelenting calls at work and home, property

"inspections", and other actions by AHMSI seeking to collect money from the Birsters is

collection activity.  Second, the FCCPA applies to "any person" attempting to collect a consumer

debt and the statute makes no distinction between secured creditors, unsecured creditors, and

debt collectors.  Accordingly, AHMSI actions violated the FDCPA and FCCPA.  Lastly, AHMSI

intentionally harassed, intimidated and harmed the Birsters and, therefore, AHMSI is liable to the

Birsters for intentional infliction of emotional distress.

STATEMENT OF THE FACTS

Paul Birster and Angela Birster are victims of unrelenting and abusive debt collection

tactics employed by AHMSI.   Since the early 1990s, Angela has suffered from an inoperable

glioma, more commonly known as a brain tumor, that cannot be diagnosed as either cancerous or

non-cancerous.  (Angela Dep. at 44:8-9; Bonnie Murphy Aff. at ¶ 5).  As a result of her brain

tumor, Angela suffered some headaches and other medical problems.  (Angela Dep. at 44:11-12).

Paul and Angela own a home in Jupiter, Florida that they refinanced on April 19, 2006 to

get money needed for repairs due to hurricane damage.   (Angela Dep. at 23:5-24:11).   The

Birsters' refinance transaction was originally with Option One.  (Angela Dep. at 23:5-6).   The

Birsters' modified their original loan with Option One in September 2007.  (Angela Dep. at 26:5-12).  In March 2008, the Birsters' again worked with Option One in modifying their loan a second time.  (Angela Dep. at 36:21-37:7).  According to the alleged owner and holder of the promissory note and mortgage encumbering the Birsters' home, the Birsters defaulted under the terms of the second modified promissory note and mortgage on June 1, 2008.  (Angela Aff. at Exhibit A; Paul Aff. at Exhibit A)

The promissory note and mortgage provide that any missed payment by the Birsters places their loan into a default status.  (Angela Dep. at Exhibit 1, p. 2).  AHMSI began servicing the Birsters' loan on July 30, 2008, two months after the alleged default under the terms of the note and mortgage.  (Defendant's SUMF at ¶ 9).  Accordingly, AHMSI began servicing the loan after it was deemed to be in a default status.

U.S. Bank, National Association, as Trustee for the Certificate Holders of Asset Backed Securities Corporation Home Equity Loan Trust, Series OOMC 2006-HE5 initiated a foreclosure action against the Birsters, and other potentially interested defendants, on February 2, 2009.  (Paul Aff. at Exhibit A).  The Birsters were served with a complaint and summons in the foreclosure action on February 5, 2009.  (Paul Aff. at Exhibit A).  After being served with the complaint and summons in the foreclosure action, the Birsters retained Henry W. Hicks, Esq. to represent them in connection with the mortgage loan and foreclosure proceedings, and have contested the mortgage foreclosure based upon many defenses.  (Angela Dep. at 115:25-116:2).

In 2008, AHMSI began its relentless assault on the Birsters.  (Angela Dep. 114:10-14).  As part of its collection campaign against the Birsters, AHMSI placed multiple calls to the Birsters on a daily basis.  (Paul Dep. at 110:14-15)  Most of AHMSI's calls occurred well after AHMSI knew of Angela's illness and after AHMSI ascertained why the Birsters were not paying

their loan.  (Angela Dep. at Exhibit 8).  The phone calls from AHMSI escalated after the filing of

the foreclosure and were accompanied by regular inspections of the property.  As early as April

16, 2009, the Birsters informed AHMSI that they had retained an attorney to represent them

concerning the alleged debt and the foreclosure action and provided AHMSI with the attorney's

name and phone number.  (Angela Dep. at 112:25-113:6; Angela Aff at ¶ 8; AHMSI Telephone

Log).  Further, the Birsters advised AHMSI to contact their attorney and to cease contacting

them directly.  (Angela Aff. at ¶ 8a-l).

Despite receiving the name and address of the Birsters' attorney on numerous occasions,

AHMSI continued its direct communications with the Birsters.  (Angela Dep. at 112:25-113:6).

At a minimum, AHMSI placed telephone calls directly to the Birsters on April 16, 2009, April

22, 2009, April 24, 2009, April 29, 2009, May 5, 2009, May 6, 2009, May 20, 2009, May 27,

2009, and June 2, 2009.  (AHMSI Telephone Log; Angela Aff. at ¶ 8a-l).  During each call,

Angela repeatedly provided AHMSI with the name and contact information for her attorney.

(Angela Aff. at ¶8a-l).  In these telephone calls, AHMSI absolutely refused to cease and desist

from directly contacting the Birsters, AHMSI used abusive and offensive language towards

Angela, and AHMSI made false representations that the Birsters' home was scheduled to be sold

at a foreclosure sale and that the Birsters would be kicked out of their home and living on the

streets in 120 degree heat.  (Angela Aff. at ¶ 8a-l).  After a particularly abusive telephone call

placed to the Birsters by AHMSI on May 5, 2009, Angela collapsed in her front yard while

retrieving her mail and was rushed to a nearby hospital.  (Angela Aff. at ¶ 8g).  Because Angela

did not have insurance coverage, she was only stabilized at the hospital and, when she got home,

she spent three days in bed recovering from the incident.  (Angela Aff. at ¶ 8g).  This was

Angela's worst medical problem since her brain tumor diagnosis in the early 1990s. (Angela Aff. at ¶ 8g).

Once the phone calls to the Birsters finally ceased, AHMSI then adjusted its collection tactics to begin intimidating and harassing the Birsters at their home. AHMSI began escalating its practice of sending its agents to conduct alleged "inspections" of the property despite knowing the Birsters resided on the property and that the property was being properly maintained. (Angela Dep. at 102:3-11). Initially, the inspections were only monthly, and each visit included a note left on the Birsters' gate informing them AHMSI had visited their home. (Angela Dep. at 100:12-14). However, AHMSI soon began visiting the Birsters home with such increased frequency that Angela and Paul were soon unable to sit on their front porch because AHMSI was sending its agents to the property every day or every other day. (Angela Dep. at 102:3-6). AHMSI's home inspections even occurred in front of the Birsters' family and friends on Thanksgiving Day 2010 and Christmas Day 2010. (Angela Dep. at 104:8-25). It is important to note that AHMSI's home "inspections" have persisted throughout the course of this lawsuit. (Angela Dep. at 103:17-104:25). Angela spoke with at least one of AHMSI's inspectors and specifically told them the Birsters were represented by an attorney, that the house was not being abandoned and requested the inspector to leave the Birsters alone. (Angela Dep. at 104:8-25). These requests were ignored and, ultimately, the harassment inflicted upon Paul and Angela through unnecessary and unrelenting home "inspections" by AHMSI made Paul feel uneasy at home and pushed Angela to the point of depression and suicide. (Paul Dep. at 112:10-12; Angela Dep. at 13:21, 102:3-11; Bonnie Murphy Aff. at ¶ 7c).

Angela was unable to emotionally and psychologically handle the home inspections and the continued intimidation tactics and, in August 2009, she attempted to commit suicide,

resulting in another hospitalization and was hospitalized for suicidal tendencies in March 2011, when she was treated for several days before being released.  (Angela Dep. at 102:12-19; 103:20-21; Angela Aff. at ¶ 10).  After leaving the hospital on March 29, 2010, Angela was greeted upon her return to her home by another AHMSI home "inspection."  (Angela Dep. at 104:1-4).  It was after this last round of "inspections" in March 2011 that Angela and Paul fled their home in Florida and are temporarily seeking treatment and relief in Arizona.  (Angela Dep. at 103:22-104:4; 114:15-16).  Their adult children continue to live in and maintain the house.

## ARGUMENT AND CITATION TO AUTHORITY

### I. STANDARD OF REVIEW.

Summary judgment is only permissible where the moving party demonstrates there are no genuine issues of fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  All doubts regarding the existence of a dispute of material fact must be resolved in favor of the nonmoving party.  Hayden v. First National Bank of Mt. Pleasant, 595 F.2d 994, 996-97 (5th Cir. 1979); Assily v. Tampa General Hosp., 814 F. Supp. 1069 (M.D. Fla. 1993).[1]  Based on this standard, the Birsters have demonstrated sufficient issues of material fact and, therefore, this Court must deny AHMSI's motion for summary judgment.

### II. THE PLAINTIFF'S FDCPA CLAIMS MUST BE ALLOWED TO STAND.

AHMSI is a debt collector subject to the FDCPA because AHMSI acquired its rights to service the loan and because AHMSI began its collection efforts **after** there was a default under the terms of the promissory note and mortgage.  Further, AHMSI was engaged in debt collection because AHMSI's actions were absolutely not related to the enforcement of any security interest.

---

[1] Decisions of the former Fifth Circuit are binding upon the district courts of the new Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

### A.   AHMSI is a Debt Collector Subject to the FDCPA.

AHMSI is a debt collector subject to the prohibitions and restrictions imposed by the FDCPA.  The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  As an exception to this definition, the FDCPA provides that the term "debt collector" does not include

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) **concerns a debt which was not in default at the time it was obtained by such person**; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor

15 U.S.C. § 1692a(6)(f).  When enacted, the intent of the FDCPA was to except mortgage loan servicers only where they began collecting the debt prior to default.  "[T]he committee does not intend the definition to cover the activities of… mortgage service companies and others who service outstanding debts for others, **so long as the debts were not in default when taken for servicing**."  S. Rep. No. 95–382, at 3–4 (1977) reprinted in 1977 U.S.C.C.A.N. 1695, 1977 WL 16047 (emphasis added).  Subsequent case law supports this interpretation that the exception only applies "as long as the debt was not in default at the time it was assigned."  Reese v. JPMorgan Chase & Co., 686 F. Supp. 2d 1291, 1308 (S.D. Fla. 2009); Bentley v. Bank of America, N.A., et al., Case No. 10-60941-WPD at *4 (S.D. Fla. Mar. 23, 2011).  See also Memmott v. OneWest Bank, 2011 WL 1560985 (D. Or. Feb. 9, 2011) (holding that exception provided under 15 U.S.C. § 1692a(6)(f)(iii) was inapplicable where the plaintiff alleged OneWest Bank acquired loans after default).

AHMSI contends it is not a "debt collector" as defined by the FDCPA because AHMSI acquired the alleged mortgage debt prior to the debt being in default.  This contention is patently untrue. The promissory note and mortgage encumbering the Birsters' home is allegedly owned by U.S. Bank, National Association, as Trustee for the Certificate Holders of Asset Backed Securities Corporation Home Equity Loan Trust, Series OOMC 2006-HE5 (US Bank Trust). (Angela Aff. at Exhibit A; Paul Aff. at Exhibit A).  AHMSI is the loan servicer and, in short, AHMSI's sole purpose is to collect money from the Birsters.

On or about January 21, 2009, the US Bank Trust filed a Complaint against the Birsters seeking to foreclose the mortgage on the Birsters' home.  In that complaint, the US Bank Trust alleged that Birsters were in default of their obligations under the note and mortgage by failing to make the payment due June 1, 2008 and all subsequent payments.    AHMSI contends that it "started servicing [the Birsters'] loan on July 30, 2008, two months after the alleged default. (Defendant's SUMF at ¶ 9).

The promissory note being collected by AHMSI provides that "[i]f [the Birsters] do not pay the full amount of each monthly payment on the date it is due, [the Birsters] will be in default."  (Angela Dep. at Exhibit 1, p. 2).  Accordingly, the promissory note and mortgage would be in default upon any missed payment by the Birsters.  Accordingly, the Notice of Default sent by AHMSI to the Birsters on September 30, 2008 is NOT the triggering event for whether the loan is in default.  By the terms of the promissory note itself, the Birsters are in default if they fail to make a monthly payment, irrespective of whether AHMSI later sent a letter informing the Birsters of their default.  Based on this timeline, it is clear that AHMSI began servicing the loan and began its efforts to collect monies allegedly due on the loan after the loan was in default.

Because the actual owner of the promissory note and mortgage has alleged that the Birsters failed to make the payment due June 1, 2008, and all subsequent payments, AHMSI clearly took over servicing of this debt two months after default.  If anything, there are issues of fact concerning whether AHMSI began servicing and collecting the alleged debt after it was in default.  Therefore, summary judgment based on the premise that AHMSI is not a debt collector is inappropriate.

**B.      AHMSI Engaged in Debt Collection.**

The FDCPA is a remedial statute and, as such, should be construed liberally in favor of consumers.  See, e.g., Johnson v. Riddle, 305 F. 3d 1107, 1117 (10th Cir. 2002).  Courts across the country, including courts in Florida, have recognized the dichotomy between mere enforcement of a security interest and debt collection.  Contrary to AHMSI's assertions, AHMSI was NOT seeking to enforce any security interest.  The efforts to enforce the security interest were initiated by the US Bank Trust upon the filing of the foreclosure action on February 2, 2009.  AHMSI's actions were taken for the sole purpose of collecting money from the Birsters and, therefore, AHMSI was engaged in debt collection activity.

Enforcement of a security interest (mortgage) is separate and distinct from the collection of monies allegedly due under a promissory note.  McDaniel v. South & Assoc., P.C., 325 F. Supp. 2d 1210 (D. Kan. 2004).  Actions to collect a debt, even though it may be secured by a mortgage, can constitute debt collection.  Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373 (rejecting the argument that foreclosure actions are merely efforts to enforce a security interest and holding that activities surrounding the foreclosure were attempts to collect a debt).  See also Acosta v. Campbell, 2006 WL 3804729, at *5 (M.D. Fla. Dec. 22, 2006) (noting the distinction between simple foreclosures and foreclosures seeking a deficiency balance).

The Birsters claims do not arise from the enforcement of a security interest, but rather arise from the collection of money.  AHMSI only contacted the Birsters to collect money from them.  (Angela Dep. at 115:13-15).  AHMSI is not named as a plaintiff or a defendant in the pending foreclosure action filed by the US Bank Trust.  (Paul Aff. at ¶ 5).

AHMSI cites <u>Warren v. Countrywide Home Loans, Inc.</u>, 342 Fed. Appx. 458 (11th Cir. 2009), for the proposition that collecting on a mortgage loan is not debt collection activity.  The holding of <u>Warren</u> is more limited than AHMSI contends and <u>Warren</u> is distinguishable from this case.[2]  In <u>Warren</u>, the plaintiff's complaint arose from actions of the defendant related solely to the defendant's foreclosing of the plaintiff's home.  <u>Id.</u> at 459.  Further, the plaintiff in Warren was not suing a loan servicer but was suing the owner and holder of the note and mortgage.  <u>Id.</u> Based on these facts, the court held that foreclosing on a home is not debt collection.  <u>Id.</u> at 461. However, the Warren court did not address the issue of whether extrajudicial actions and the placement of telephone calls by a loan servicer, which began servicing the loan after default and which was solely trying to collect money, falls under the FDCPA.

AHMSI is definitely not foreclosing on the Birsters' home.  The foreclosing party is US Bank Trust.  AHMSI is not named as a plaintiff nor a defendant in the foreclosure action. AHMSI's sole purpose relative to the note and mortgage is to collect amounts owed under the note, a debt allegedly owed by the Birsters.  Accordingly, the <u>Warren</u> decision and other decisions holding that foreclosing is not debt collection are entirely inapplicable in this case.

**D.      The Plaintiffs Have Proven Violations of the FDCPA.**

The FDCPA prohibits AHMSI from communicating directly with the Birsters after receiving notice the Birsters were represented by and attorney and prohibits AHMSI from

---

[2] The Plaintiffs also wish to point out for the Court that the plaintiff in <u>Warren</u> was acting *pro se* and failed to raise numerous arguments at the trial court level and on appeal.

communicating with the Birsters after receiving a notice to cease and desist communications. 15 U.S.C. § 1692c(a)(2); 15 U.S.C. § 1692c(c). AHMSI violated both of these provisions by contacting the Birsters after being told the Birsters had an attorney and by contacting the Birsters after receiving a written notice to cease and desist direct communications. (Angela Dep. at 112:25-113:11; AHMSI Telephone Log; Angela Aff. at ¶ 8; Paul Dep. at 111:9-16).

The FDCPA also prohibits AHMSI from engaging in harassing conduct, using willfully abusive language, and repeatedly engaging the Birsters in telephone conversation for the purpose of annoying, or harassing the Birsters. 15 U.S.C. § 1692d. The Birsters established that AHMSI continued its relentless phone calls and home "inspections" long after the point where such communications and contact constituted harassment. (Angela Dep. at 102:3-11, 104:8-25, 116:11-13; Paul Dep. at 110:14-15). The Birsters established that AHMSI used willfully abusing language in its communications with the Birsters. (Angela Aff. at ¶ 8).

Third, the FDCPA prevents AHMSI from using false misrepresentations in connection with collecting a debt from the Birsters, including using false or deceptive means to collect a debt, threatening to take action that cannot legally be taken, and using unfair an unconscionable means to collect a debt. 15 U.S.C. 1692e, e(5), e(10); 15 U.S.C. § 1692f. The Birsters have shown that AHMSI falsely represented its legal rights by repeatedly telling the Birsters their home was soon to be sold at a foreclosure sale. (Angela Aff. at ¶ 8). Further, AHMSI engaged in unconscionable tactics by falsely telling the Birsters they would be kicked out of their home and living in the streets in 120 degree heat. (Angela Aff. at ¶ 8f).

Lastly, the FDCPA prohibits AHMSI from continuing its collection efforts between the period after receiving a notice of dispute and request for verification and providing that verification. 15 U.S.C. § 1692g. The Birsters have proven that AHMSI violated the FDCPA by

continuing to make efforts to enforce a disputed debt because AHMSI continued calling the

Birsters after receiving their written dispute letter on May 19, 2009.   (AHMSI Telephone Log;

Angela Aff. at ¶ 8e).

**III.   THE PLAINTIFFS' FCCPA CLAIMS MUST BE ALLOWED TO STAND.**

    **A.    AHMSI is a Person Subject to the FCCPA.**

The FCCPA has a much broader application than its counterpart FDCPA.   Williams v.

Streep Music. Co., Inc., 333 So. 2d 65 (Fla. 4th DCA 1976) (holding that § 559.72 of the FCCPA

is not restricted to collection agencies and that it applies to "all allegedly unlawful attempts at

collecting consumer claims").

    Among other prohibitions, the FCCPA provides that

> In collecting consumer debts, **no person** shall:…
> (7)  Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.
> (8)  Use profane, obscene, vulgar, or willfully abusive language in communicating with the debtor or any member of her or his family.
> (9)  Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist…
> (18)   Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within a reasonable period of time to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

FLA. STAT. § 559.72 (emphasis added).[3]   Under the FCCPA, the term "person" is not limited to

collection agencies and applies to persons generally, including all corporations.   Cook v. Blazer

Financial Services, Inc., 332 So. 2d 677, 679 (Fla. 1st DCA 1976).   That the FCCPA was to have

---

[3] For clarity to this Court, the Birsters wish to point out that the language quoted above is from Fla. Stat. § 559.55 as it existed at the time of filing this action.   The statute was amended effective October 1, 2010 and the additional language is not cited herein.

general applicability to all persons, regardless of their status as a debt collector, is made clear by

the title to the original session law, which provided that

> [An Act] relating to the regulation of consumer collection practices; providing definitions; providing for licensing, fees, and bonding of collection agencies; providing standards governing the issuance of collection agency licenses; **providing for prohibited practices applicable to persons generally**; providing a civil remedy."

Id. at 679 (internal citations omitted) (emphasis added).  See also Heard v. Mathis, 344 So. 2d

651 (Fla. 1st DCA 1977) (applying FCCPA to a private person who made an oral, noninterest

bearing loan to a friend).

Accordingly, Florida courts have uniformly determined that the FCCPA applies to all

persons who attempt to collect a debt.  Mays v. CitiBank, N.A., 2005 WL 6111610 (Fla. 1st

DCA Nov. 20, 2007); Schauer v. General Motors Acceptance Corp., 819 So.2d 809, 811-12 (Fla.

4th DCA 2002) (holding that the FCCPA is not restricted to debt collectors and, therefore, an

original creditor was a "person" subject to the FCCPA); White v. Federal Financial Corp., 379

So.2d 136, 138 (Fla. 5th DCA 1980) (holding the FCCPA is not restricted to debt collectors).

Therefore, AHMSI is subject to the FCCPA for its actions.

**B.     The Plaintiffs Have Proven Issues of Fact Concerning AHMSI's Violations of the FCCPA.**

The Birsters have testified that AHMSI directly contacted them after they repeatedly told

AHMSI they were represented by an attorney.  (Angela Dep. at 112:25-113:11).  The Birsters

also provided AHMSI with the name and address of their attorney.  (Angela Dep. 113:7-11).

AHMSI's own phone records corroborate the Birsters' testimony in this regard and show that

AHMSI was told on April 16, 2009 that the Birsters were represented by an attorney, including

the telephone number for their attorney's office.  (AHMSI Telephone Log)    The FCCPA

prohibits AHMSI from directly communicating with the Birsters after AHMSI receives

knowledge of, or could readily ascertain, the name and address of the Birsters' attorney.  FLA. STAT. § 559.72(18).  There is absolutely no requirement under the FCCPA that this notice of representation be given to AHMSI in writing.  Nonetheless, the Birsters notified AHMSI in writing of such representation and to cease and desist from further phone calls, and AHMSI persisted in contacting the Birsters directly even after receiving notification in writing. As such, AHMSI's telephone calls and communications to the Birsters made after being given the name and address of the Birsters' attorney represent actionable violations of both the FCCPA and FDCPA.

The Birsters' testimony establishes that AHMSI contacted them numerous times a day despite the Birsters' repeated requests that AHMSI cease calling.  (Angela Dep. 113:3-6; Paul Dep. 110:14-111:16).  The FCCPA prohibits AHMSI from communicating with the Birsters with such frequency as can be expected to harass the Birsters.  FLA. STAT. § 559.72(7).  "Suggestions of a wholly quantified standard seem artificial, because the effect of repeated telephone calls is colored by their tone and purpose." Story v. J.M. Fields, Inc., 343 So. 2d 675, 676 (Fla. 1st DCA 1977) (internal citations omitted).  Further, "[f]or good or ill, [FLA. STAT. § 559.72(7)] largely commits to **juries** the double role of defining appropriate standards and applying them on a **case by case basis**, after considering not only the frequency of the calls but also the legitimacy of the creditor's claim, the plausibility of the debtor's excuse, the sensitivity or abrasiveness of the personalities and all other circumstances that color the transaction." Id. at 677 (emphasis added). While a creditor may contact a debtor to inform them of the default, determine the reasons for nonpayment, and attempt to persuade the debtor to pay prior to litigation, "[b]eyond that point communication 'can reasonably be expected to harass the debtor or his family,' because it tends only to exhaust the resisting debtor's will." Id.

That is exactly the case here.  The number of calls is reasonably in dispute.  (Paul Dep. at 110:14-15; Angela Aff. at ¶ 8).  The necessity of the calls, the purpose of the calls, and the nature and abusiveness of the calls are all reasonably in dispute in this action.  Further, the Birsters have produced record evidence of the abusiveness of AHMSI's calls through name calling, false representations about the status of the foreclosure, and through AHMSI's absolute refusal to cease contacting a known represented party.  (Angela Aff. at ¶ 8; AHMSI Telephone Log).  Further, the Birsters have alleged that they are essentially living in exile in Arizona to avoid the continued and unrelenting harassment employed by AHMSI.  (Angela Dep. at 114:15-16).  While AHMSI has alleged "deplorable" conduct on the part of the Birsters, such allegations are merely smoke screens to deflect attention away from AHMSI's own deplorable actions in harassing the Birsters, which a decent society would find truly disgusting and offensive.  Accordingly, it is for the jury to determine whether the calls from AHMSI to the Birsters go "beyond that point" and could be reasonably expected to harass the Birsters.  Therefore, this Court should deny AHMSI's motion for summary judgment.

**C.    The Plaintiffs Have Shown Actual Damages.**

The Birsters have presented medical evidence and other testimony relative to proving their claims for emotional and physical damages.  (Bonnie Murphy Aff. at ¶ 7c, ¶ 8).  Further, the Birsters have shown that Angela's condition worsened significantly since AHMSI began its campaign of harassment against the Birsters.  (Angela Dep. at 116:11-15; Paul Dep. 109:18-22, 110:12-15).  Further, Paul is currently unable to work because of the care and support he must provide to his wife to keep her stable through this terribly ordeal.  (Paul Dep. at 114:3-10)

Without extolling the full spectrum of the doctrine, AHMSI is liable to the Birsters for aggravation of any pre-existing injuries based upon the eggshell plaintiff doctrine.  A tort-feasor

takes a victim as they find them and may be held liable for the aggravation of pre-existing conditions. <u>Silva v. Stein</u>, 527 So. 2d 943 (Fla. 3d DCA 1988). <u>See also</u> W. Prosser & W. Keeton, The Law of Torts § 43, at 291-292 (5th ed. 1984). Moreover, the Defendant was well aware of Mrs. Birsters' medical condition, as it had been brought to their attention through various hardship letters presented to AHMSI relative to the Birsters' efforts to obtain a modification of their loan. (Angela Dep. at 116:20-25)

Punitive damages are appropriate when a defendant's conduct is fraudulent, deliberately violent or oppressive, malicious, or committed with such gross negligence as to indicate wanton disregard for rights of others. <u>Domke v. McNeil-P.P.C., Inc.</u>, 939 F. Supp. 849 (M.D. Fla.1996). For purposes of punitive damages claim under Florida law, requisite evil intent may be inferred from defendant's having pursued a course of action in wanton disregard of consequences. <u>Id.</u> Intentional misrepresentations can form the basis for an award of punitive damages. <u>Southstar Equity, LLC v. Lai Chau</u>, 998 So.2d 625 (Fla. 2d DCA 2008), rehearing denied, 988 So.2d 1094. AHMSI told the Birsters on five different occasions between April 16, 2009 and June 2, 2009 that a foreclosure sale was set in their foreclosure case, which was completely false and malicious. (Angela Aff. at ¶ 8). In this action, the evidence presented by the Birsters shows a clear intent or, at a minimum, presents issues of fact concerning AHMSI's intentional and clear disregard for the Birsters' rights. For instance, the Birsters have presented evidence showing that AHMSI and its agents promoted a policy in direct contradiction of federal and state law, namely refusing to cease and desist from contacting known represented parties. (Angela Aff. at ¶ 8). There is no reasonable doubt that the Birsters informed AHMSI on several occasions that they were represented by an attorney. Despite receiving this information, AHMSI intentionally continued to place numerous telephone calls to the Birsters trying to collect money by attempting

to scare them and exhaust their will to resist.  (Angela Aff. at ¶ 8; Angela Dep. 116:11-15; Paul Dep. at 110:14-15).  Based on AHMSI's continued offensive efforts, harassing phone calls after being given the name and address of the Birsters' attorney on numerous occasions, continued "inspections" of the Birsters' home in such a manner as can only be calculated to break the Birsters' will and further damage the Birsters' fragile emotional state, reasonable jurors could conclude that AHMSI's actions were taken with intentional or gross disregard for the Birsters' rights and, therefore, the jury could find an award of punitive damages is appropriate. Accordingly, the Birsters have presented sufficient evidence to allow their claims for punitive damages to proceed to trial.

## IV.   THE PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS MUST BE ALLOWED TO STAND.

A claim for intentional infliction of emotional distress should be based on intentional or reckless conduct that is so outrageous as to go beyond all bounds of decency and intolerable in a civilized community and that causes severe emotional distress.  See, e.g., LeGrande v. Emmanuel, 889 So. 2d 991, 994 (Fla. 3d DCA 2004).  Whether conduct is so outrageous as to support a claim for intentional infliction of emotional distress is a question of law for the court to determine.  Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594-95 (Fla. 2d DCA 2007). AHMSI has not argued that its actions were unintentional or that the emotional distress suffered by the Birsters was not severe.  Rather, AHMSI contends that its conduct was not outrageous or, alternatively, that AHMSI's conduct was privileged.  Accordingly, the Birsters will address only the arguments raised by AHMSI.

### A.   AHMSI's Conduct Was Outrageous and Intolerable.

Outrageousness of conduct may arise from a defendant's knowledge of the particular susceptibility of a person to emotional distress.  Steadman, 968 So. 2d at 595.

> The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.

Restatement (Second) of Torts § 46, cmt. F (1965).

The Birsters have alleged that they were repeatedly contacted by AHMSI despite the Birsters informing AHMSI they were represented by counsel and despite AHMSI's knowledge of Angela's particularized medical condition which made her susceptible to emotional distress.

AHMSI threatened to have the Birsters removed from their home, falsely told the Birsters their home was being sold at a foreclosure sale, continued to harass the Birsters long after AHMSI was told the Birsters were represented by an attorney, and continued to make home inspections calculated to embarrass and harm the Birsters.  (Angela Aff. at ¶ 8; Angela Dep. at 102:3-11, 104:8-25).   In fact, the Birsters have testified that AHMSI sent its agents to the Birsters' home on Thanksgiving Day 2010 and Christmas Day 2010 as part of AHMSI's apparent Gestapo-style harassment tactics.  (Angela Dep. at 104:24-25).  Certainly, AHMSI was aware of Angela's heightened susceptibility after being told of Angela's illness in numerous communications to AHMSI and after the filing of this lawsuit by the Birsters.  Nevertheless, AHSMI continued its mission of harassing and intimidating the Birsters through its near constant home inspections, which ultimately resulted in the Birsters being so uncomfortable in their home that they fled to Arizona.  (Angela Dep. at 104:8-25, 114:15-16).

If this is not the type of outrageous and deplorable conduct that gives rise to the claim for intentional infliction of emotion, then there would be little any defendant could do in order to give rise to this claim.  At a minimum, the Birsters have presented sufficient evidence showing there are issues of fact concerning their intentional infliction of emotional distress claims.

**B.      AHMSI's Actions Were Not Privileged.**

AHMSI is partially correct in asserting that conduct may be privileged where a party does "no more than insist upon [their] legal rights **in a permissible way**."  Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277, 279 (Fla. 1985) (citing Restatement (Second) of Torts § 46, cmt. G (1965)) (emphasis added).  For the privilege to apply, however, the evidence must establish that AHMSI asserted its alleged rights in a legally permissible manner.  Canto v. J.B. Ivey and Co., 595 So. 2d 1025, 1028 (Fla. 1st DCA 1992).  Even assuming it is generally permissible for AHMSI to place telephone calls and make home inspections, this conduct and direct communications with the Birsters became impermissible once the Birsters provided AHMSI with notice they were represented by an attorney.  Where AHMSI's actions violate a statute or other law, AHMSI's actions are not being enforced in a legally permissible way.  Among other things, FLA. STAT. 559.72 prohibits contacting debtors with such frequency as can be expected to harass the debtor or their family, abusive language, claiming or trying to enforce a legal right that does not exist, and directly communicating with known represented parties.  FLA. STAT. § 559.72(7), (8), (9), (18).

AHMSI's engagement in the conduct prohibited by FLA. STAT. § 559.72 precludes any assertion that AHMSI's conduct was done in a legally permissible way.  As shown more fully above, the Birsters have presented sufficient evidence that the conduct of AHMSI violated both the FDCPA and FCCPA and, accordingly, AHMSI was not asserting any alleged legal right in a permissible way.

Therefore, AHMSI's actions were not privileged and AHMSI is not entitled to summary judgment concerning the Birsters' intentional infliction of emotional distress claims on this basis.

## CONCLUSION

AHMSI has harassed and intimidated the Birsters as part of its efforts to collect an alleged debt from the Birsters. The FDCPA applies to AHMSI because AHMSI began servicing the Birsters' loan after it was in default. The FCCPA applies to AHMSI because the FCCPA applies to any person, regardless of their status as a debt collector.

The Birsters have shown that AHMSI violated the FDCPA and the FCCPA through: (a) its relentless telephone calls; (b) continued home "inspections" of the Birsters' home; (c) continued efforts to contact the Birsters despite being notified the Birsters were represented by an attorney and providing all information necessary to contact the Birsters' attorney; and (d) intentional misrepresentations concerning the status of the foreclosure action  claiming the Birsters' home was being sold at a foreclosure sale that had never been scheduled. As shown above, the actions of AHMSI cannot be tolerated by society and AHMSI's actions are not privileged because AHMSI was not enforcing any of its alleged rights in a permissible way.

Lastly, the Birsters have presented sufficient evidence to establish that the Birsters' physical and mental damages are directly attributable to AHMSI's harassment and intimidation tactics.

Accordingly, this Court must deny the Defendant's motion for summary judgment and allow this case to proceed to trial.

SIGNATURE PAGE TO FOLLOW

Respectfully submitted,


/s/ Adam J. Knight
Adam J. Knight
Florida Bar No. 69400
Attorney for the Plaintiffs

Henry W. Hicks, P.A.
3003 West Azeele Street, Suite 200
Tampa, Florida 33609
Tele. 813.876.3113
Fax. 813.871.9202
aknight@titlemark.net


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished by CM/ECF

electronic delivery to Eric S. Matthew, Esq., AKERMAN SENTERFITT, LLP, 350 East Las

Olas Boulevard, Suite 1600, Fort Lauderdale, Florida 33301 on this  6th  day of June, 2011.


By:  /s/ Adam J. Knight
     Adam J. Knight